OPINION
{¶ 1} After a trial by jury, Devonte Walker was found guilty of trafficking in cocaine and tampering with evidence. He was sentenced to concurrent terms of four years and one year.
 {¶ 2} Walker assigns as error the trial court's removal of a juror it determined had been *Page 2 
sleeping during the trial.
 I {¶ 3} At about 3:40 p.m. on January 3, 2006, it was brought to the attention of the trial court that Stephanie Avery, juror number three, appeared to be asleep. The prosecutor asked that Avery be excused because "this is very crucial testimony." The trial court took no action until approximately 4:32 p.m. At that time, the court conferred with the prosecutor, defense counsel, Deputy Statzer (who accompanied Walker to court), and Detective Emerson, who was the State's representative. The court observed that it was "a fairly critical portion of the testimony" during which Avery was believed to have been sleeping and "in order to make the factual determinations that need to be made, she needs to have heard all the testimony." The court then met in chambers with juror Avery, counsel for the parties, Walker, and Detective Emerson. Upon questioning by the court and defense counsel, Avery said that although her eyes were closed, she heard everything that was said. At that point, Avery left the court's chambers and the court said in the presence of the others: "I have no reason to disbelieve her really. . . ." The court then invited Deputy Statzer and Detective Emerson to speak. Both stated that Avery appeared to have been sleeping. After hearing from Statzer and Emerson, the following discussion occurred:
 {¶ 4} "THE COURT: All right. Obviously, this is a tough call because Ms. Avery has indicated rather adamantly that she wasn't sleeping.
 {¶ 5} "On the other hand, the testimony that I've heard from Officer Statzer and also Detective Emerson leads me to believe that she did, in fact, fall asleep for a period of somewhere around ten to 15 minutes. Sounds like she was fighting sleep for about five of those minutes and then, she probably was fast asleep for about ten minutes or so. And what leads me to that conclusion *Page 3 
is the testimony of Detective Emerson about her fighting sleep. We've all been there.
 {¶ 6} "MS. HOWLAND: (Prosecutor) Yeah.
 {¶ 7} "THE COURT: We've all been in that position where we want to stay awake, we are fighting to stay awake to watch the end of a TV show or whatever the case may be and you do that, you do fight sleep in the manner described by Detective Emerson.
 {¶ 8} "And then, there's no doubt based upon Brian's testimony that for a period of seven to ten minutes, she was reclined essentially.
 {¶ 9} "And so, based upon all of that coming together, I have to conclude that for a period of 15 minutes or so, during a very critical part of the testimony, when visual testimony was being testified to by Detective House that Ms. Avery was not in a position to see and hear that which was being offered as testimony.
 {¶ 10} "And so, I think the prudent thing for me to do — and of course, Tom (Tom Merritt, Defense Counsel), I understand you're going to object to this. And again, I'm not unmindful of the fact that she is the only African-American juror on this jury.
 {¶ 11} "But nonetheless, given what I've been told, the only conclusion that I can reach is that for a period of time, again ten to 15 minutes, she was unable to hear or see some pretty critical testimony. And I think it's unfair to the State and equally really unfair to Mr. Walker to allow her to serve as a juror in this case.
 {¶ 12} "So, I'm going to remove her as a juror and we'll put alternate Wheeler into her place on Thursday morning. We'll let her know what's going on when she arrives on Thursday morning.
 {¶ 13} "MR. MERRITT: And Your Honor, I understand what the Court's inclined to do. When would I be able to at least put on the record my objection? *Page 4 
 {¶ 14} "THE COURT: Right now.
 {¶ 15} "MR. MERRITT: Okay. Well, what I'd like to do is object because I think that despite what the detective and the deputy have said, that the best judge of whether or not she was asleep is her. She in no uncertain terms indicated that she was not.
 {¶ 16} "The jurors come in each, I assume her no different, conscientious about their duty. She took the oath and may have been uncomfortable, may have been tired, may have wanted to, like she had said, to rest her eyes. But from her own mouth, she indicated that she was not sleeping.
 {¶ 17} "And so, I would just — I think that the way it's played out, I think her being the only African-American on the jury is an ancillary issue and perhaps unfortunate. But by the same token, I think that she has articulated to the Court that she was not sleeping. And so, we would strenuously object to her being removed.
 {¶ 18} "THE COURT: I understand that, Tom. And I'm certainly aware of what her testimony was. What I'm seeing [sic] is, I heard that. I think she's embarrassed by what occurred. I don't think she wants to admit what occurred. And based upon the other testimony that I heard, I'm convinced that she was, in fact, asleep. And based upon that, I feel that I have no alternative in fairness to everyone but to strike her from the jury."
 II {¶ 19} Walker concedes that whether to excuse juror Avery was commended to the discretion of the trial court and that the court's discretion is "considerable" where sleeping jurors are concerned.
 {¶ 20} Walker appears to argue that the trial court should have credited Avery's assertion that she was not asleep over Deputy Statzer's and Detective Emerson's assertions, particularly after *Page 5 
the court had stated "I have no reason to disbelieve her." Whom to believe was commended to the judgment of the trial court and the record provides us with no basis to second guess the trial court. The court's above-quoted statement was made before the trial court heard from Statzer and Emerson.
 {¶ 21} Walker next argues that juror Avery did not miss crucial testimony, even if she was asleep. Essentially, he claims Avery missed no more than a few minutes of testimony from Detective House that lasted two hours and was repetitive. He further notes that some of the up to fifteen minutes sleep time occurred during a sidebar conference where Avery's sleeping was brought to the court's attention. (This sidebar lasted two minutes.)
 {¶ 22} The written transcript furnished to us in support of this assignment is limited to the proceedings culminating in juror Avery being excused from the jury. The written transcript does not permit us to evaluate the trial court's determination that Avery was asleep "during a very critical part of the testimony." From the written transcript that has been provided to us, this determination was well within the court's discretion. It is noteworthy that although he vigorously objected to the court's excusing Avery, defense counsel did not argue that the testimony she slept through was unimportant.
 {¶ 23} Walker also appears to fault the court for not admonishing juror Avery about sleeping. The trial court stated at 4:32 p.m. that after Avery's apparent sleeping had been brought to his attention at 3:40, she appeared to have awakened and had stayed awake. It was within the court's discretion not to admonish Avery under those circumstances, particularly where unnecessary embarrassment of Avery was likely had the court done otherwise.
 {¶ 24} We conclude that there was a sufficient basis for the court's action and we find that the court acted well within its discretion. *Page 6 
 {¶ 25} The assignment of error is overruled.
 III {¶ 26} The judgment will be affirmed.
 GRADY, J. and DONOVAN, J., concur. *Page 1